## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BRIAN MICHAEL WATERMAN,**

      **Plaintiff,**

      v.                                                                    CASE NO.  20-3154-SAC

**DAVID GROVES, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed *in forma pauperis*.  Plaintiff is detained at the Cherokee County Jail in Columbus, Kansas ("CCJ").  The Court has given Plaintiff multiple opportunities to amend his complaint to comply with Federal Rules of Civil Procedure 8, 18 and 20.  This matter is before the Court for screening Plaintiff's Third Amended Complaint (Doc. 56) ("TAC").

## I.  Nature of the Matter before the Court

Plaintiff's TAC includes eight counts against various defendants.  As Count I, Plaintiff claims that Defendants Groves and Tippie have a policy to prohibit all newspapers, law books, magazines, and books from publishers, from coming into the CCJ.  Plaintiff alleges that all requests have been denied to several prisoners at the CCJ.  Plaintiff claims a First Amendment violation.

As Count II, Plaintiff claims that he was taken to a cell on February 4, 2019, and was not allowed to flush his toilet for three days, because Defendant Tippie had the water shut off to his toilet.  Plaintiff alleges that feces and urine were built up and his cell smelled "horrific." (Doc. 56, at 5.)  Plaintiff claims this was done as punishment by Tippie and constitutes deliberate indifference.

As Count III, Plaintiff alleges that Defendants Correctional Food Services, Davis and Lions, violated his Fourteenth Amendment rights.  Plaintiff alleges that the main course for his lunch and dinner food tray were salted to the point of being unfit for consumption.  Plaintiff alleges that Captain Tippie conspired with the kitchen cooks to destroy his meals in retaliation for grievances he filed on Tippie and the cooks on the previous day.

As Count IV, Plaintiff alleges that due to a tumor in his jaw he is on medical orders for a soft diet.  Plaintiff claims that on May 9 and 10, 2020, Consolidated Correctional Food Services and kitchen cooks Danny Davis and Lara Lions gave Plaintiff frozen oatmeal for breakfast. Plaintiff alleges that Tippie, Davis, and Lions decided to all go against medical orders to punish Plaintiff.

As Count V, Plaintiff claims that on April 28, 2020, Tippie refused to drop Plaintiff's classification.  Plaintiff requested to change his classification from maximum to medium based on his good behavior. Plaintiff claims that although Tippie has changed other inmates' classifications and moved inmates to different pods, Plaintiff is the only max inmate that was not allowed to be reclassified.

As Count VI, Plaintiff alleges that in April 2020, he made a request to see Nurse Wagner and Advance Correctional Healthcare for a tumor on his lower jaw.  Plaintiff alleges that he was evaluated by Jailer Montgomery, who passed his medical evaluation on to Sgt. Montanye and Montanye then called Wagner.  Plaintiff alleges that his soft diet was denied, but he was given 600 IBU twice a day and mouth wash for $10.00.  Plaintiff alleges that Wagner made no attempt to see Plaintiff.  Plaintiff was transferred to the Sedgwick County Jail, and his medical files were not sent with him.  Plaintiff had an infection and was placed on antibiotics and a soft diet.  When

Plaintiff was transferred back to the CCJ, it took almost three weeks to finally see Wagner regarding his tumor.  Plaintiff had the tumor removed back in 2018, and Wagner was claiming that the new tumor was just scar tissue.  After filing this lawsuit, Plaintiff was seen by a specialist who confirmed that it was a tumor and scheduled surgery.  Plaintiff alleges that his medical care was delayed because Wagner relied on jailers to evaluate Plaintiff.  Plaintiff sets forth other examples of inmates being evaluated by jailers instead of medical professionals. Plaintiff alleges that Sheriff Groves stated that he would not investigate Wagner's medical abuse.

As Count VII, Plaintiff claims that on April 17, 2019, Wagner retaliated against him by "attacking" his prescribed diet that he was placed on while Wagner was gone.  Plaintiff claims that supposedly he was denied his protein shakes to combat purging per Captain Tippie.

As Count VIII, Plaintiff alleges that in June 2020, Tippie and Groves opened up two outgoing civil letters and stole his six-month account summaries to stop the civil action against them.  Plaintiff alleges that they also threw away a postcard to the Sedgwick County Jail requesting the account summary from that jail.  Plaintiff alleges that the account summary was not sent in for this case, as well as for Case No. 18-cv-3295 in the Tenth Circuit Court of Appeals.  Plaintiff alleges that his Tenth Circuit case was dismissed based on the failure to receive the account statement.  Plaintiff also claims that legal mail was thrown away in his criminal case in 2016 and 2018.

Plaintiff names as Defendants:  David M. Groves, Sheriff; Michelle Tippie, Captain; Advance Correctional Healthcare; Kristen Wagner, APRN; Consolidated Correctional Food Services; Danny Davis, Cook; and Lara Lions, Cook.  Plaintiff sues all Defendants in their individual capacity.  Plaintiff seeks $500,000 in declaratory relief, $500,000 in punitive damages

and $500,000 in compensatory damages.  Plaintiff also seeks injunctive relief in the form of an order allowing newspapers, books and outside publications, and a special master appointed to:

> investigate the jails training program medical policies of illness reports being done by jailors, inmates being extorted out of their funds by Tippie.  The outside food providers be trained, supervised to policies.   That an entire new training, supervision and disciplinary program be ordered.  The United States Inspector General post office be ordered to investigate Cherokee Sheriffs Department for throwing away postage mail sent out by inmates. Any other training needed.

(Doc. 56, at 15–16.)

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).  A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In addition, the court accepts all well-pleaded allegations in the complaint as true.  *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006).  On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in

a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Conditions of Confinement

Plaintiff alleges that the toilet was not flushed in his cell for three days; his main course of his meal was overly salted on two occasions; and his oatmeal at his breakfast meal was frozen on two occasions.

The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims). A prison official violates the Eighth Amendment when two requirements are met. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97,

103 (1976).  The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted).  Indeed, prison conditions may be "restrictive and even harsh."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety."  *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834.  Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety.  *Id*.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id*.  It is not enough to establish that the official should have known of the risk of harm.  *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id*.  As the severity of

the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases.  Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

The conditions Plaintiff complains of were limited to a few days or a few instances. Plaintiffs' allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  Plaintiff has also failed to allege "deliberate indifference" by any defendant.  Plaintiff should show good cause why his claims in Counts II, III and IV, should not be dismissed.

## 2.  Medical Claims

"[D]eliberate indifference to a pretrial detainee's serious medical needs includes both an objective and a subjective component."  *Strain v. Regalado*, 977 F.3d 984, 989 (10th Cir. 2020) (finding that although a pretrial detainee's claim is based on the Fourteenth Amendment, the same standard for Eighth Amendment claims applies).  To establish the objective component, "the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension."  *Id*. at 989–90 (citations omitted).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 990 (citation omitted).  The "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)). Plaintiff does not make such a showing and therefore has not satisfied the objective prong for proving a constitutional violation.

Plaintiff also fails to satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). Plaintiff's apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). Plaintiff has failed to show that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference.

Plaintiff's medical claims are subject to dismissal for failure to state a claim. They also appear to be unrelated to the remaining claims in this case. Plaintiff should show good cause why his medical claims in Counts VI and VII should not be dismissed.

### 3. Classification

Plaintiff claims in Count V that his requests to be reclassified to a lower security level were denied. Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d

1194, 1197–98 (10th Cir. 2007).  Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility.  *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).  Plaintiff's claims in Count V regarding his security classification are subject to dismissal for failure to state a claim.

### 4.  Retaliation and Conspiracy

To the extent Plaintiff claims the Defendants acted in retaliation or were conspiring with each other, such claims are dismissed.  Plaintiff fails to state a claim of retaliation or conspiracy.

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity;  (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice."  *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive."  *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001)

(citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff's claims of retaliation are subject to dismissal for failure to allege adequate facts in support of the claims.   Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive.

Plaintiff's bald allegation of a conspiracy is likewise insufficient to state a claim. Plaintiff fails to assert factual allegations in support of his claim.   To state a claim for conspiracy, Plaintiff must include in his complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).   A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.*   Here, Plaintiff provides no factual information whatsoever to demonstrate any type of agreement was made between anyone.   Such conclusory allegations fail to state a plausible claim for relief.   Plaintiff should show good cause why his retaliation and conspiracy claims should not be dismissed for failure to state a claim.

## 5. Counts I and VIII

The Court finds that the proper processing of Plaintiff's claims in Counts I and VIII cannot be achieved without additional information from appropriate officials of the CCJ.   *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).   Accordingly, the Court orders the appropriate officials of the CCJ to prepare and file a *Martinez* Report regarding these claims.   Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **November 8, 2021,** in which to show good cause why his claims in Counts II, III, IV, V, VI, and VII, and any retaliation and conspiracy claims, should not be dismissed for failure to state a claim.

**IT IS FURTHER ORDERED that:**

> (1)    Officials responsible for the operation of the CCJ are directed to undertake a review of the subject matter of Counts I and VIII of the TAC:

> > a.    To ascertain the facts and circumstances;

> > b.    To consider whether any action can and should be taken by the institution to resolve the subject matter of those claims; and

> > c.    To determine whether other like complaints, whether pending in this Court or elsewhere, are related to those claims and should be considered together.

> (2)    Upon completion of the review, a written report shall be compiled which shall be filed with the Court by **November 8, 2021,** and served on Plaintiff. The CCJ officials shall seek leave of the Court if they wish to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

> (3)    Authorization is granted to the officials of the CCJ to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)     No answer or motion addressed to the TAC shall be filed until the *Martinez* Report required herein has been prepared and filed.

(5)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the TAC and the report ordered herein.   This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

Copies of this order shall be transmitted to Plaintiff, to the Cherokee County Sheriff and to the Cherokee County Attorney.

**IT IS SO ORDERED**.

**Dated October 8, 2021, in Topeka, Kansas.**

**s/ Sam A. Crow**
**Sam A. Crow**
**U.S. Senior District Judge**