IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRIAN MICHAEL WATERMAN,

    **Plaintiff,**

v.                                      CASE NO. 20-3154-SAC

DAVID GROVES, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis*. Plaintiff is detained at the Cherokee County Jail in Columbus, Kansas ("CCJ"). The Court has given Plaintiff multiple opportunities to amend his complaint to comply with Federal Rules of Civil Procedure 8, 18 and 20. On October 8, 2021, the Court screened Plaintiff's Third Amended Complaint (Doc. 56) ("TAC") and entered a Memorandum and Order (Doc. 74) ("M&O") granting Plaintiff an opportunity to show good cause why Plaintiff's claims in Counts II, III, IV, V, VI, and VII, and any retaliation and conspiracy claims, should not be dismissed for failure to state a claim. The Court also directed the officials responsible for the operation of the CCJ to file a *Martinez* Report on Counts I and VIII of the TAC. This matter is before the Court on Plaintiff's response (Doc. 77) and for screening in light of the *Martinez* Report that was filed on November 8, 2021 (Doc. 78). Plaintiff has also filed a motion for order (Doc. 79) titled "motion to stop harassment."

**I. Claims Subject to Dismissal**

Despite multiple warning from the Court and several opportunities to file an amended complaint, Plaintiff continued to submit complaints with unrelated claims. Plaintiff's TAC includes eight counts against various defendants. The Court found in the M&O that Counts II,

1

III, IV, V, VI, and VII, and any retaliation and conspiracy claims, were subject to dismissal. Plaintiff was given an opportunity to show good cause why these claims should not be dismissed.

### A. Conditions of Confinement

In his TAC, Plaintiff makes several claims regarding his conditions of confinement at the CCJ. Plaintiff alleges that the toilet in his cell was not flushed for three days; his main course of his meal was overly salted on two occasions; and his oatmeal at his breakfast meal was frozen on two occasions.

The Court found in the M&O that because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

The conditions Plaintiff complained of were limited to a few days or a few instances. The Court found that Plaintiffs' allegations failed to allege a "sufficiently serious" deprivation or facts showing that he was "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff also failed to allege "deliberate indifference" by any defendant.

### B. Classification

Plaintiff claims in Count V that his requests to be reclassified to a lower security level

were denied. The Court found in the M&O that Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). The Court found that Plaintiff's claims in Count V regarding his security classification were subject to dismissal for failure to state a claim.

### C. Medical Claims

The Court found in the M&O that Plaintiff's apparent disagreement over his course of treatment does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010). Plaintiff failed to show that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they also drew the inference. The Court also found that Plaintiff's medical claims appear to be unrelated to the remaining claims in this case.

### D. Retaliation and Conspiracy

In his response, Plaintiff argues that the Court should have considered whether or not the Defendants' actions constituted punishment or retaliation. However, the Court found that Plaintiff failed to state a claim of retaliation or conspiracy.

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the

> plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

The Court found that Plaintiff's claims of retaliation were subject to dismissal for failure to allege adequate facts in support of the claims. Plaintiff's allegations regarding retaliation are generally conclusory, lacking facts to demonstrate any improper retaliatory motive. Plaintiff's response fails to cure this deficiency.

Plaintiff's bald allegation of a conspiracy is likewise insufficient to state a claim. Plaintiff fails to assert factual allegations in support of his claim. To state a claim for conspiracy, Plaintiff must include in his complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010). A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.* Here, Plaintiff provides no factual information whatsoever to

demonstrate any type of agreement was made between anyone. Such conclusory allegations fail to state a plausible claim for relief. Plaintiff has failed to state a valid claim of retaliation or conspiracy.

Plaintiff has also failed to show that Defendants' actions were done as punishment. Pretrial detainees, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (citations omitted). "A person lawfully committed to pretrial detention has not been adjudged guilty of any crime . . . [and] has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Id*. (citations omitted). The government may "detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id*. at 536–37. To determine when restrictions pass, as a matter of law, from constitutionally acceptable to constitutionally impermissible, a court must ask two questions. *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013). "First, we must ask whether an 'expressed intent to punish on the part of detention facility officials' exists" and "[i]f so, liability may attach. If not, plaintiff may still prove unconstitutional punishment by showing the restriction in question bears no reasonable relationship to any legitimate governmental objective." *Id*. (citing *Bell*, 441 U.S. at 538–39).

Plaintiff has not shown an intent to punish on the part of staff at the CCJ, and his allegations suggest, at most, negligence. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540. "[I]n addition to

5

ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id*.  The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id*. at 540, n.23 (citations omitted).

## II.  Claims in Counts I and VIII

As Count I, Plaintiff claims that Defendants Groves and Tippie have a policy to prohibit all newspapers, law books, magazines, and books from publishers, from coming into the CCJ. Plaintiff alleges that all requests have been denied to several prisoners at the CCJ. Plaintiff claims a First Amendment violation.

As Count VIII, Plaintiff alleges that in June 2020, Tippie and Groves opened up two outgoing civil letters and stole his six-month account summaries to stop the civil action against them.  Plaintiff alleges that they also threw away a postcard to the Sedgwick County Jail requesting the account summary from that jail.  Plaintiff alleges that the account summary was not sent in for this case, as well as for Case No. 18-cv-3295 in the Tenth Circuit Court of Appeals.  Plaintiff alleges that his Tenth Circuit case was dismissed based on the failure to receive the account statement.  Plaintiff also claims that legal mail was thrown away in his criminal case in 2016 and 2018.

The Court found that the proper processing of Plaintiff's claims in Counts I and VIII could not be achieved without additional information from appropriate officials of the CCJ.  *See*

*Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court ordered the appropriate officials of the CCJ to prepare and file a *Martinez* Report regarding these claims. The M&O provided that once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

The *Martinez* Report has now been filed and the Court is considering dismissal of Counts I and VIII. The Report provides that there is no written policy at the CCJ prohibiting outside materials, rather such outside publications require administrative approval. The Report provides that pretrial detainees are temporarily placed at the jail awaiting trial, so it is not common for them to subscribe to newspapers while housed there. They do have access to the CCJ's online law library and physical library, which contains books and other materials that have been donated to the jail. The Report provides that Captain Tippie is not aware of any occasion in which Plaintiff requested or was sent a newspaper or magazine subscription. Rather, Plaintiff appears to be raising his complaints on behalf of other inmates. The Report also denies Plaintiff's claims that his outgoing legal mail was stolen, pointing to Plaintiff's extensive court filings.

The Court will grant Plaintiff an opportunity to respond to the *Martinez* Report and to show good cause why Counts I and VIII should not be dismissed.

**III. Motion to Stop Harassment**

Plaintiff alleges that on October 30, 2021, he requested to go to a segregation cell or another pod due to numerous inmates being sick. Plaintiff alleges that he was not allowed to move and on October 31, 2021, he became sick. On November 2, 2021, he was taken to segregation for quarantine and was tested for Covid on November 4, 2021. Plaintiff alleges that although he tested negative, he was left in segregation until November 11, 2021. Plaintiff alleges

that this was done in retaliation and that he was not allowed to clean his segregation cell. Plaintiff alleges that during his "hour out" he has to argue with the jailers to get the television turned on, and "some nights it doesn't even happen." (Doc. 79, at 1.) Plaintiff alleges that he was supposed to go back to general population but is being punished for wanting to be tested for Covid. Plaintiff asks the Court to enter an order demanding that Plaintiff be moved back to general population or transferred to a different jail.

Plaintiff has not shown that he is entitled to injunctive relief. Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir.

2005).  Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation.  18 U.S.C. § 3626(a)(2).

Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above.  *Little*, 607 F.3d at 1251.  In addition, Plaintiff's request for relief is unrelated to the claims in his TAC.  *See id*. (observing that the party seeking a preliminary injunction "must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint") (internal quotation marks omitted)).  Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.  Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED THAT** Plaintiff's motion to stop harassment (Doc. 79) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiff's claims in Counts II, III, IV, V, VI, and VII, and any retaliation and conspiracy claims, are **dismissed** for failure to state a claim.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **December 20, 2021,** in which to file a response to the *Martinez* Report at Doc. 78 and to show good cause why his claims in Counts I and VIII should not be dismissed for failure to state a claim.

**IT IS SO ORDERED**.

**Dated November 23, 2021, in Topeka, Kansas.**

<u>s/ Sam A. Crow</u>
**Sam A. Crow**
**U.S. Senior District Judge**